# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. CHRISTOPHER RODNEY BUTLER

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-684     Roy B. Morgan, Jr., Judge**

**No. W2010-01729-CCA-R3-CD  - Filed July 25, 2011**

A Madison County Circuit Court jury convicted the appellant of solicitation of a minor to commit rape of a child, a Class B felony; driving under the influence (DUI), fourth offense, a Class E felony; and indecent exposure, a Class B misdemeanor.  The trial court sentenced him to concurrent sentences of ten years, two years, and six months, respectively.  On appeal, the appellant contends that the evidence is insufficient to support the solicitation of a minor conviction.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined.  DAVID H. WELLES, J., not participating.

Joseph Taggart, Jackson, Tennessee, for the appellant, Christopher Rodney Butler.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that the Madison County Grand Jury indicted the appellant for solicitation of a minor to commit rape of a child; DUI, fourth offense; indecent exposure; and resisting arrest.  At trial, fourteen-year-old Shundarion Taylor testified that on July 3, 2009, he was at the home of the victim's grandmother, Marilyn Reddick, "popping fireworks." Taylor, his brother, and the victim were outside, and the victim was sitting on the porch.  He

said that "this orange-ish and black truck pulled up in the front yard . . . asking if we had a little girl." Taylor said he approached the truck and asked, "'What did ya'll say?'" He said the men in the truck said, "'Can we have the girl?'" The children went into the house and told Reddick, and she told Taylor to keep the men occupied until the police arrived. Taylor went back outside, and the driver of the truck said, "[C]an [I] have the girl 'til 2:00 so she can suck [my] dick." The driver offered one hundred fifty dollars for the victim. Taylor testified that he tried to stall the driver by telling him that the victim would come out soon. He said that the passenger wanted to leave and that the two men got into a "little fight." He said that when the passenger got out of the truck to use the bathroom, the driver "lifted up his dick, and then he tried to show us and then we all turned our head." Taylor said he saw the driver's penis, and he identified the appellant in court as the driver.

On cross-examination, Taylor testified that the truck arrived about 11:00 p.m. and that the victim was his cousin. Street lights were present, and Taylor could see well. He said he was about ten feet from the truck and could see into the truck. The victim was on the porch, and the truck was about twelve feet from the porch. The porch light was not turned on. When asked if he noticed anything unusual about the appellant, Taylor said, "His clothes were down. His leg fell off. His breath was stinky."

Fifteen-year-old Cameron Reddick testified that on the night of July 3, 2009, he was at his home when some men pulled up in a truck and said they wanted "'the girl for some money.'" He and the other children went into the house and told his grandmother. He said his grandmother told them "to go along with it 'til the police come." He stated that the driver of the truck said, "'I want the girl to suck my dick until 2:00 in the morning.'" He said that Shundarion Taylor had the most interaction with the driver and that he did not see the driver expose himself. The police arrived and arrested the driver.

On cross-examination, Reddick testified that he was fourteen years old at the time of the incident and that the victim, his cousin, was eleven. A child named "Ty" also was present. Reddick said that the victim was sitting on the porch and that he did not know how far the truck was from the porch. Defense counsel asked Reddick, "Is it as far, say, from you to this wall right here?" Reddick answered, "That's about it right there." Defense counsel estimated the distance to be twenty-five to thirty feet. Reddick said that the area was dark, that the appellant did not ask the victim's age, and that no one revealed the victim's age to the appellant.

The eleven-year-victim testified that on the night of July 3, 2009, she was at her grandmother's house. The victim, Cameron Reddick, Shundarion Taylor, and "Ty" went outside to shoot fireworks. She said that two white men pulled up in a red truck and that one of the men told her "to go put on a bikini and suck his 'til 2:00 in the morning." The victim

ran into the house and started crying. Her grandmother also started crying, called 911, and told Reddick and Taylor to go outside and talk with the men until the police arrived.

On cross-examination, the victim testified that she was sitting on the porch swing when the truck arrived and was ten to fifteen feet from the truck. The windows were down, and she could see into the truck. The men did not speak to her; Taylor and Reddick told her what the men said. The passenger got out of the truck and urinated on the side of the vehicle. She did not see the driver get out of the truck.

Marilyn Reddick testified that she lived on Honey Bear Drive in Jackson. On July 3, 2009, her grandson and his friend came into the house and reported that two men were outside and wanted to have sex with the victim. She said that she telephoned the police and that the police arrested the men. She said that Honey Bear Drive was a lighted street and that she did not remember if her porch light was on.

Officer Michael Heath Thompson of the Jackson Police Department testified that about 10:45 p.m. on July 3, 2009, he and other officers were dispatched to Marilyn Reddick's home. When they arrived, they saw an orange Dodge truck with two men inside. The officers ordered the men to get out of the truck, but they refused. Officer Thompson and another officer forcibly removed the driver. He said the driver's pants were "undone" and "were down to probably like thigh-knee region." He said "a small girl's doll head," a "female children's Bible," and some "cap gun rounds" were found in the truck. The officers also recovered a one-hundred-dollar bill from the driver's hand. He said that the driver's eyes were "hazy, a little glassy," that the driver smelled of alcohol, and that the driver was "fidgety, . . . just kind of zoned." He identified the appellant in court as the driver.

On cross-examination, Officer Thompson testified that the appellant appeared to be intoxicated. However, the appellant was coherent.

Officer Ron Pugh of the Jackson Police Department testified that he responded to Marilyn Reddick's home on July 3, 2009. Officers found the appellant and another man sitting inside a truck parked at the house, and the appellant's pants were pulled down around his thighs. Officer Pugh and Officer Thompson had to pull the appellant from the truck. When they got the appellant onto the ground and began to handcuff him, they found a one-hundred-dollar bill in his hand. Officer Pugh said that the appellant was "obviously intoxicated" and that the appellant "said a few things that were pretty incoherent."

Paul Butler, Sr., the appellant's father, testified for the appellant that the appellant had an eight-year-old daughter. He described the appellant's injuries from a car accident, stating that the appellant "got hurt real bad, . . . split his skull open, . . . his pelvis . . . is just metal,

and, you know, he lost his leg." Butler said the appellant used "a lot of medication," alcohol, and crack cocaine. He said the appellant was a good father, but he acknowledged that he had custody of the appellant's daughter. He said that he owned the orange truck and that the appellant's daughter had toys and other personal property in the truck.

The thirty-six-year-old appellant testified that on July 3, 2009, he went to a club called the Mix Factory. He said he and his friend were sitting outside the club in an orange truck when a black man approached and asked if he wanted to buy cocaine. The man offered to drive him to get the cocaine, and he agreed. He said that the man got into the truck and that the man drove "down there, in some area up in there." The man got out of the truck and went to get the cocaine while the appellant waited. Suddenly, the police appeared and pulled the appellant out of the truck. He said that he was wearing sweat pants, that his artificial leg came off when the officers pulled him from the vehicle, and that the ejection of his prosthetic leg pulled his pants away from his body.

The appellant testified that he was "really messed up" on alcohol and that the black man drove the truck to where the cocaine could be purchased because he was too intoxicated to drive. He said he intended to buy an "eight ball" of cocaine for one hundred or one hundred fifty dollars. He denied exposing himself, seeing a girl at the location where the truck was parked, or asking for oral sex from the girl.

Shundarion Taylor testified on rebuttal for the State. He stated that no black male was in the orange truck when it arrived on July 3, 2009.

## II. Analysis

The appellant claims that the evidence is insufficient to support his conviction for solicitation of a minor. Specifically, he argues that State failed to prove that he knew or should have known that the victim was a juvenile. The State claims that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958

S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In the present case, the indictment specified rape of a child as the mode of the solicitation offense. Tennessee Code Annotated section 39-13-528 provides, in relevant part, as follows:

> (a) It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet services, directly or through another, to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age, or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of one (1) or more of the following offenses:
>
> > (1) Rape of a child, pursuant to § 39-13-522[.]
>
> > (b) It is no defense that the solicitation was unsuccessful, that the conduct solicited was not engaged in, or that the law enforcement officer could not engage in the solicited offense. It is no defense that the minor solicited was unaware of the criminal nature of the conduct solicited.

Tennessee Code Annotated section 39-13-522(a) defines rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

The appellant claims that the State failed to prove that he knew or should have known

that the victim was a juvenile because his intoxication, his distance from the victim, and the lack of adequate lighting precluded him from discerning that she was under eighteen years old. We disagree. Viewed in the light most favorable to the State, the evidence shows that the appellant drove up to the front of the house. The victim, who was ten or eleven years old, was sitting on the front porch. Shundarion Taylor said the men asked for "a little girl." The witnesses estimated the distance between the appellant and the victim to be ten to fifteen feet and twenty-five to thirty feet. The jury heard the estimates and resolved any conflicts in the evidence. The jury also saw and heard the eleven-year-old victim testify and had the opportunity to assess her appearance. We note that, in overruling the appellant's motion for judgment of acquittal, the trial court stated that the jury "had [the] opportunity to . . . observe the actual size and appearance of this young lady." The jury determined that the appellant knew or should have known that the victim was less than eighteen years old. Accordingly, the appellant's conviction for solicitation of a minor to commit rape of a child is affirmed.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE